# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

SEAN CHACON,

      Plaintiff,

v.                                                                                        No. CV 16-242 CG

NANCY A. BERRYHILL, Acting Commissioner
of the Social Security Administration,

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Plaintiff Sean Chacon's *Motion to Reverse and Remand for a Rehearing with Supporting Memorandum*, (Doc. 16), filed November 21, 2016; Defendant Commissioner Nancy A. Berryhill's *Brief in Response to Plaintiff's Motion to Reverse and Remand the Agency's Administrative Decision*, (Doc. 20), filed February 21, 2017; and Mr. Chacon's *Reply in Support of Motion to Reverse and Remand for a Rehearing*, (Doc. 23), filed March 10, 2017.

Mr. Chacon originally filed for supplemental security income on April 27, 2011, when he was under 18 years old. (AR 228). His application was denied initially on June 24, 2011, (AR 115), and again upon reconsideration on November 21, 2011. (AR 124-26). Mr. Chacon requested a hearing before an Administrative Law Judge ("ALJ") on January 16, 2012. (AR 143). In February 2012, Mr. Chacon turned 18. (See AR 228). On March 26, 2014, Mr. Chacon requested a prehearing conference, (AR 154), which was held on May 1, 2014, before ALJ Fred Upshall. (AR 44-68). Loretta Chacon, Mr. Chacon's aunt whom Mr. Chacon refers to as his grandmother, testified at the hearing. (AR 45; 53-62). ALJ Upshall held a supplemental hearing on August 22, 2014, at which

Mr. Chacon, Ms. Chacon, and Thomas Greiner, an impartial vocational expert ("VE"), testified. (AR 69-110).

On September 17, 2014, ALJ Upshall issued his decision denying Mr. Chacon's claim under both childhood and adult standards of disability. (AR 13-38). Mr. Chacon requested review by the Appeals Council, which denied his request on February 1, 2015, (AR 1-6), making the ALJ's decision Defendant's final decision for purposes of this appeal.

Mr. Chacon has appealed to this Court arguing the ALJ committed reversible error under both the childhood and adult standards of disability. Under the childhood standard, Mr. Chacon argues the ALJ erred by failing to find Mr. Chacon had at least a marked limitation in the domain of attending and completing tasks. (Doc. 16 at 1). Under the adult standard, Mr. Chacon alleges the ALJ failed to incorporate medical opinions into Mr. Chacon's residual functional capacity ("RFC"). (Doc. 16 at 1). The Court has reviewed the Motion, the Response, the Reply, and the relevant law. Additionally, the Court has meticulously reviewed the entire record. For the following reasons, the Court finds Mr. Chacon's motion should be **DENIED**.

**I.     Standard of Review**

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992)). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the

plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). The Commissioner's "failure to apply the correct legal standards, or show . . . that she has done so, are grounds for reversal." *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996) (citing *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994)). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for the Commissioner's. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g) (2015), which is generally the ALJ's decision, rather than the Appeals Council's denial of review. *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214; *Doyal*, 331 F.3d at 760. An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting" it. *Langley,* 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. While the Court may not re-weigh the evidence or try the issues *de novo*, its examination of the record must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II.     Applicable Law and Sequential Evaluation Process

For purposes of supplemental security income ("SSI"), a child is "disabled" when he "has a medically determinable physical or mental impairment which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1237 (10th Cir. 2001) (citing 42 U.S.C. § 1382c(a)(3)(C)(i)). In order to determinate whether a child is disabled, the Commissioner follows a three-step sequential evaluation process ("SEP"). 20 C.F.R. § 416.924(a); *Briggs*, 248 F.3d at 1237. The ALJ "must determine, in this order, (1) that the child is not engaged in substantial gainful activity, (2) that the child has an impairment or combination of impairments that is severe, and (3) that the child's impairment meets or equals an impairment listed in Appendix 1, Subpart P of 20 C.F.R. Pt. 404." *Briggs*, 248 F.3d at 1237 (citing 20 C.F.R. § 416.924(a)).

At the third step, the ALJ must assess whether the child's impairments, alone or in combination, medically or functionally equal a listing. 20 C.F.R. § 416.924(a). In doing so, the ALJ considers all relevant factors, including: (1) how well the child initiates and sustains activities, how much sleep he needs, and the effects of structured or supportive settings; (2) how the child functions at school; and (3) the effects of the child's medications or other treatments. *Id.* at § 416.926a(a)(1)-(3); *Briggs*, 248 F.3d at 1237-38. The ALJ must assess the child's functioning in terms of six domains: (i) acquiring and using information; (ii) attending and completing tasks; (iii) interacting and relating with others; (iv) moving about and manipulating objects; (v) caring for himself; and (vi) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi); *Briggs*, 248 F.3d at

1238. A child is disabled if he has "marked" limitations in two of these domains or an "extreme" limitation in one domain. 20 C.F.R. § 416.926A(d).[1]

In order to determine whether an adult claimant is disabled, the Commissioner follows a five-step sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920 (2012). At the first four steps of the SEP, the claimant bears the burden of showing: (1) he is not engaged in "substantial gainful activity"; (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and either (3) his impairment(s) either meet or equal one of the "Listings"[2] of presumptively disabling impairments; or (4) he is unable to perform her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *see Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). If the ALJ determines the claimant cannot engage in past relevant work, the ALJ will proceed to step five of the evaluation process. At step five, the Commissioner must show the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Grogan*, 399 F.3d at 1261.

**III. Background**

    a. *Childhood Standard of Disability*

Mr. Chacon filed for supplemental security benefits claiming Attention-Deficit Hyperactivity Disorder ("ADHD"), Oppositional Defiant Disorder ("ODD"), bipolar disorder, a seizure disorder, and severe headaches limited his ability to work. (AR 111). At step one of the SEP, the ALJ found Mr. Chacon had not engaged in any substantial

---

[1] The terms "marked" and "extreme" are defined in 20 C.F.R. § 416.924a(e).
[2] 20 C.F.R. pt. 404, subpt. P, app. 1.

5

gainful employment since his application was filed. (AR 22). At step two, the ALJ found Mr. Chacon had the following severe impairments: ADHD, bipolar disorder, and post-traumatic stress disorder ("PTSD"). (AR 22).

Proceeding to step three, the ALJ first determined Mr. Chacon did not have an impairment or combination of impairments that met or medically equaled a listed impairment. (AR 22). Further, Mr. Chacon did not have an impairment or combination of impairments that functionally equaled a listed impairment. (AR 22). The ALJ concluded Mr. Chacon's impairments could reasonably be expected to produce his alleged symptoms, but that his statements regarding the intensity, persistence, and limiting effects of his symptoms were not credible to the extent they conflicted with the ALJ's later RFC. (AR 23).

The ALJ then turned to opinion evidence in the record. First, the ALJ exhaustively discussed several opinions rendered before Mr. Chacon's application for SSI. (AR 23-25). Because these "evaluations were completed long before" Mr. Chacon's alleged onset date, the ALJ assigned them "limited weight." (AR 25).

By contrast, the ALJ gave several opinions great weight: those by Gerald L. Russell, Ph.D.; Robert Romero, Mr. Chacon's tenth grade Spanish teacher; and the state agency medical consultants. (AR 26). Dr. Russell evaluated Mr. Chacon's cognitive, academic, and psychological functioning in March, 2011. (AR 25). Among other suggestions, Dr. Russell recommended Mr. Chacon attend treatment for his ADHD, as "all other treatments might be negatively impacted by [Mr. Chacon's] inability to sit still and pay attention." (AR 25; 613). Ultimately, the ALJ gave Dr. Russell's

6

opinion great weight because it was consistent with his interview notes, Mr. Romero's opinion, and Ms. Chacon's report. (AR 25).

Mr. Romero filled out a teacher questionnaire that asked questions related to the six domains of functioning. (AR 292-99). As the ALJ noted, Mr. Romero stated Mr. Chacon was distracted by his phone and "drama" with friends. (AR 26; 294). Mr. Romero indicated Mr. Chacon has "problems" in the first five domains of functioning, with specific ratings ranging from "no problem" to "obvious" or "serious" problems. (AR 25; 294-297). The ALJ assigned Mr. Romero's opinion great weight due to the length of his interaction with Mr. Chacon and how Mr. Romero supported his determinations. (AR 25-26).

Finally, the ALJ gave great weight to two state agency medical consultants. (AR 26). At the initial and reconsideration stages, state agency consultants determined Mr. Chacon had no limitation in the fourth domain, less than marked limitation in the first, second, and fifth domains, and marked limitation in the third domain. (AR 26). The ALJ gave these opinions great weight on account of their experience in reviewing medical records and their consistency with the record. (AR 26).

At the final step of the childhood analysis, the ALJ found Mr. Chacon had no limitation in three domains, less than marked limitation in two domains, and marked limitation in one domain. (AR 26-31). Evidence indicated Mr. Chacon focused well on medication and was "very capable" when focused and on task. (AR 28). Finally, the ALJ cited the state agency findings that Mr. Chacon suffered less than marked limitations in attending and completing tasks. Without an "extreme" limitation in one domain or "marked" limitations in two domains, Mr. Chacon did not suffer an impairment or

7

combination of impairments that medically or functionally met or equaled a Listing impairment. Accordingly, the ALJ concluded Mr. Chacon was not disabled prior to turning 18. (AR 31).

### b. *Adult Standard of Disability*

Having determined step one already, the ALJ began at step two under the adult standard of disability and found Mr. Chacon continued to suffer the same severe impairments. (AR 31). At step three, the ALJ again determined Mr. Chacon's impairments, singly or in combination, did not meet or medically equal a Listing impairment. (AR 31-33).

At step four, the ALJ found that, since turning 18, Mr. Chacon possessed the RFC to perform a full range of work at all exertional levels with two nonexertional limitations: Mr. Chacon is limited to unskilled work with no fast paced production requirements and should be isolated in his work environment except for periodic, occasional supervision. (AR 33). The ALJ again considered Mr. Chacon's statements not entirely credible. (AR 33). Although Mr. Chacon testified that his medication did not help him, treatment notes indicated his mood and grades improved while he was on medication. (AR 33). Further, evidence of Mr. Chacon's ability to take care of himself and his statements regarding his desire to just smoke marijuana reduced his credibility. (AR 33).

Turning again to opinion evidence, the ALJ granted Ms. Chacon little weight. Ms. Chacon opined regarding Mr. Chacon's ability to work, but the ALJ discounted that testimony because she is not an acceptable medical source, she is not trained to

evaluate ability to work, and because her personal relationship with Mr. Chacon could impact her descriptions. (AR 34).

The ALJ next considered the opinions of Patricia Rodriguez, a licensed school psychologist. (AR 34). Ms. Rodriguez evaluated Mr. Chacon in December, 2012, when Mr. Chacon was in eleventh grade. (AR 753). Ms. Rodriguez performed numerous tests and made a number of recommendations to improve Mr. Chacon's psychological health. (AR 760-61). Ms. Rodriguez's opinion received "great weight" due to its consistency with her interview and testing. (AR 34).

The last findings the ALJ discussed were those by Barbara May-Valencia, Ph.D. (AR 35). Dr. May-Valencia performed a consultative examination of Mr. Chacon on July 1, 2014, and diagnosed him with ADHD, PTSD, cannabis dependence, and bipolar disorder by history. (AR 35). Dr. May-Valencia assigned Mr. Chacon a Global Assessment of Functioning ("GAF") score of 38, indicating "major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood." (AR 35); *see Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1162 n.1 (10th Cir. 2012). The ALJ gave Dr. May-Valencia "moderate" weight due to her specialty in mental health, but found her low GAF score inconsistent with Mr. Chacon's employment and reported social activity. (AR 35).

Proceeding in the SEP, the ALJ found Mr. Chacon had no past relevant work. (AR 36). However, considering Mr. Chacon's age, education, work experience, and RFC, Mr. Chacon was able to perform jobs that exist in significant numbers in the national economy. (AR 36-37). The ALJ relied on VE testimony that Mr. Chacon could perform representative jobs such as weeder and farm worker in order to accommodate

9

his limitations. (AR 37). Because Mr. Chacon could perform jobs existing in significant numbers in the national economy, the ALJ concluded he was not disabled from the date he attained age 18 through the date of the decision. (AR 37).

**IV.   Analysis**

Mr. Chacon argues the ALJ committed two reversible errors: (1) impermissibly ignoring evidence in finding Mr. Chacon less than markedly limited in the second domain of functioning, ability to attend and complete tasks, (Doc. 16 at 16-19); and (2) impermissibly ignoring portions of Dr. May-Valencia's and Ms. Rodriguez's opinions in formulating his RFC, (Doc. 16 at 19-23). The Commissioner responds that the ALJ reasonably considered, weighed, and incorporated each opinion. (Doc. 20 at 4-13).

ALJs are required to consider every opinion in the record. *See* 20 C.F.R. § 416.927(b)-(c). Further, an ALJ's decision "must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (citing *Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984)). "Rather, in addition to discussing the evidence supporting his decision, the ALJ must also discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Id.* (citation omitted).  Finally, an ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence." *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004).

> a. *The ALJ did not ignore evidence in finding Mr. Chacon less than markedly limited in his ability to attend and complete tasks*

Mr. Chacon first charges the ALJ with ignoring evidence that he is markedly limited in his ability to attend and complete tasks. (Doc. 16 at 1, 16-19). In particular, Mr.

10

Chacon accuses the ALJ of disregarding evidence from Mr. Romero, Dr. Russell, and Ms. Chacon. (Doc. 16-19). Given the fact-intensive nature of Mr. Chacon's challenge, the Court will discuss each opinion in turn, then the ALJ's discussions of the opinions, and then evaluate whether the ALJ incorporated or ignored the opinions.

In May, 2011, Mr. Romero filled out a teacher questionnaire that asked questions related to the six domains of functioning. (AR 292-99). The only portion of the questionnaire relevant to this appeal is the page on attending and completing tasks. (AR 294). Mr. Romero stated Mr. Chacon was distracted by his phone and "drama" with friends outside the classroom. (AR 26; 294). Of thirteen potential "problems" on a scale from one to five, Mr. Romero indicated Mr. Chacon had a "serious" problem (4/5) in three areas, an "obvious" problem (3/5) in three areas, a "slight" problem (2/5) in four areas, and no problem (1/5) in two areas.[3] (AR 28; 294).

Dr. Russell evaluated Mr. Chacon's cognitive, academic, and psychological functioning in March, 2011. (AR 25). Overall, Mr. Chacon showed "mostly average ability" intellectually "except for low average short-term, working memory." (AR 613). Mr. Chacon also showed "some variability in his attention and concentration." (AR 613). Following three sessions, Dr. Russell made several diagnoses, including ADHD, Primarily Inattentive Type. (AR 613). Dr. Russell also made several recommendations, for instance recommending that Mr. Chacon attend treatment for his ADHD, as "all other treatments might be negatively impacted by [Mr. Chacon's] inability to sit still and pay attention." (AR 25; 613).

---

[3] Mr. Romero made no indication the thirteenth area, "sustaining attention during play/sports activities." (AR 294).

Finally, Ms. Chacon testified at both hearings and completed a function report detailing Mr. Chacon's abilities. (AR 53-62; 93-100; 303-13). Ms. Chacon described Mr. Chacon as forgetful, combative when receiving direction, and unable to focus. (AR 58-59; 310-12). For example, Ms. Chacon stated he must be reminded about personal hygiene and homework and he cannot focus long enough to complete a project, homework, or chores. (AR 97; 311-12). However, Ms. Chacon also indicated in the form and in testimony that she and Mr. Chacon do not "get along very well" and argue frequently. (AR 94-95; 97; 310).

First, the ALJ assigned Mr. Romero's opinion great weight due to the length of his interaction with Mr. Chacon and how Mr. Romero supported his determinations. (AR 25-26). In finding Mr. Chacon less than markedly disabled in the second domain, the ALJ explicitly considered Mr. Romero's report, including that Mr. Chacon was distracted by his phone and peers, and that Mr. Chacon had "serious" or "obvious" problems in six out of the twelve areas indicated. (AR 28).

Second, the ALJ also thoroughly discussed Dr. Russell's opinions and recommendations. (AR 25). In particular, the ALJ noted Dr. Russell's recommendation that Mr. Chacon attend therapy, otherwise "all other treatments might be negatively impacted by his inability to sit still and pay attention." (AR 25). The ALJ gave Dr. Russell's opinions great weight due to their consistency with his interview notes, Mr. Romero's report, and Ms. Chacon's report and testimony. (AR 25).

As for Ms. Chacon, the ALJ gave her opinion "moderate weight." (AR 26). Although Ms. Chacon reported Mr. Chacon was forgetful, had trouble accepting direction, and could not focus well enough to complete homework or chores, the ALJ

12

found Ms. Chacon's opinion "could be colored by her frustration" with Mr. Chacon "because he was messy and did not perform chores as directed." (AR 26). The ALJ found probative Ms. Chacon's testimony that she and Mr. Chacon did not get along and that she expected chores to be performed her particular way. (AR 26).

In his second domain analysis, the ALJ discussed Mr. Romero's questionnaire, Ms. Rodriguez's report, and state agency findings that Mr. Chacon was less than markedly impaired. (AR 28). The ALJ explicitly described Mr. Romero's notations of "serious" and "obvious" problems. (AR 28). The ALJ reiterated Ms. Rodriguez's report findings that Mr. Chacon was focused and attentive while on medication, but truant and negligent the previous school year. (AR 28). Finally, the ALJ cited the two state agency findings that Mr. Chacon was less than markedly disabled in attending and completing tasks. (AR 28).

Given the ALJ's thorough discussions of Dr. Russell's, Mr. Romero's, and Ms. Chacon's opinions, and the specific citation of evidence in his determination, the Court finds there is no indication the ALJ impermissibly ignored any evidence. Although the ALJ did not specifically discuss Dr. Russell or Ms. Chacon in his second domain findings, he was not required to. The ALJ was only required to do was demonstrate he considered all of the evidence. *Clifton*, 79 F.3d at 1009-10 (citation omitted). The ALJ did just that by painstakingly describing each opinion and then weighing specific evidence in support of his finding. "Where, as here, we can follow the adjudicator's reasoning in conducting our review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). This is not a

situation where the ALJ uses boilerplate language to find a claimant not disabled. *See Clifton*, 79 F.3d at 1009-11. On the contrary, the ALJ appears to have considered and weighed conflicting evidence, opting to rely on substantial evidence that Mr. Chacon was not markedly limited in his ability to attend and complete tasks. Accordingly, the Court finds no error in the ALJ's analysis.

      b. <u>The ALJ did not err in rejecting Dr. Valencia's and Ms. Rodriguez's opinions</u>

Mr. Chacon's second argument largely mirrors his first. Under the adult standard of disability, Mr. Chacon argues the ALJ erred by failing to incorporate, without explanation, various portions of Dr. May-Valencia's and Ms. Rodriguez's opinions. (Doc. 16 at 20-23). This argument is governed by the same principles explained above, and the Commissioner again argues that the ALJ reasonably incorporated Dr. May-Valencia's and Ms. Rodriguez's opinions. (Doc. 20 at 8-13).

Ms. Rodriguez performed a psychological evaluation of Mr. Chacon in December, 2012, when Mr. Chacon was in eleventh grade. (AR 753-61). Ms. Rodriguez diagnosed Mr. Chacon with ADHD, a mood disorder, chronic PTSD, anxiety disorder, and cannabis abuse. (AR 760). Ms. Rodriguez also made a number of recommendations "as a precautionary measure to maintain stability and promote psychological wellness in a preventative and proactive supportive way." (AR 760). The recommendations are all suggestions for Mr. Chacon's school and home life, nearly all of which the ALJ expressly discussed. (AR 34; 760-61). The ALJ gave Ms. Rodriguez's opinion "great weight" because it was consistent with her interview and testing of Mr. Chacon. (AR 34). Further, the ALJ "considered her school related recommendations" for Mr. Chacon and "limited him to simple work with no fast paced production requirements

as a result." (AR 34). Finally, the ALJ "limited him to isolated work due to his behavioral/interpersonal concerns." (AR 34).

The last findings the ALJ discussed were Dr. May-Valencia's. (AR 35). Dr. May-Valencia performed a consultative examination of Mr. Chacon on July 1, 2014, and diagnosed him with ADHD, PTSD, cannabis dependence, and bipolar disorder by history. (AR 35). Dr. Valencia assigned Mr. Chacon a Global Assessment of Functioning ("GAF") score of 38, indicating "major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood." (AR 35); *see Keyes-Zachary*, 695 F.3d at 1162 n.1. According to Dr. Valencia, Mr. Chacon exhibited low-average to average mental processing in several areas, including long term memory, working memory, cognitive functioning, processing speed, ability to sustain attention and concentration, and assert mental control. (AR 35). Finally, Dr. Valencia found Mr. Chacon's psychiatric symptoms "interfered" to an unspecified degree with his ability to interact appropriately with the general public, persist at basic work tasks, and adapt to changes in the work place. (AR 35; 776).

The ALJ gave Dr. Valencia "moderate" weight due to her specialty in mental health. (AR 35). But, the ALJ considered Dr. Valencia's GAF score inconsistent with her interview notes. Specifically, the ALJ considered that Mr. Chacon was working when Dr. May-Valencia interviewed him, that Mr. Chacon did not want to attend therapy because it would interfere with other things he wanted to do, and that Dr. May-Valencia recommended vocational rehabilitation for Mr. Chacon. (AR 35). A GAF score of 38, the ALJ reasoned, was inconsistent with Mr. Chacon's employment, potential for vocational rehabilitation, and social activity. (AR 35). Finally, the ALJ further discounted Dr.

15

Valencia-May's opinion because of Mr. Chacon's expressed reluctance to attend therapy. (AR 35-36).

After analyzing the opinions and the ALJ's evaluation of the opinions, there is no indication the ALJ failed to incorporate Dr. May-Valencia's and Ms. Rodriguez's opinions into his RFC without adequate explanation. First, it is noteworthy that Ms. Rodriguez did not opine regarding Mr. Chacon's limitations; rather, she made a number of "recommendations" for Mr. Chacon's psychological well-being. (AR 760). Thus, this is not a situation in which the ALJ adopted some limitations but not others and failed to explain his reasons for doing so. *See Carpenter v. Astrue*, 537 F.3d 1264, 1269 (10th Cir. 2008) (reversing ALJ who adopted some but not all of a physician's findings of limitations). Instead, the ALJ reasonably incorporated Ms. Rodriguez's recommendations into workplace restrictions. The Court will not substitute its judgment for the ALJ when his decision demonstrates he considered all the evidence.

Second, the Court finds no error in the ALJ's consideration of Dr. May-Valencia's findings. The ALJ thoroughly described Dr. May-Valencia's opinion and reasonably incorporated it to the extent he found it supported by the record. Mr. Chacon insists the ALJ was required to accept Dr. May-Valencia's finding that his symptoms "interfere[d]" with his abilities or explain his reasons for not doing so. (Doc. 16 at 21). Here again though, Dr. May-Valencia did not opine regarding the severity of the interference, making it unclear just how impaired she felt Mr. Chacon was. And, the ALJ discounted Dr. May-Valencia's low GAF score as contradicted by other evidence. (AR 35).

V.     **Recommendation**

For the foregoing reasons, the Court finds that the ALJ applied the correct legal standards and committed no reversible error. **IT IS THEREFORE ORDERED** that the Ms. Lujan's *Motion to Reverse and Remand for a Rehearing with Supporting Memorandum* (Doc. 17), is **DENIED**.

_____
THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE